# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN McALARNEN,** | : | |
| **on behalf of himself and all others** | : | **CIVIL ACTION** |
| **similarly situated,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SWIFT TRANSPORTATION** | : | |
| **COMPANY, INC.,** *et al.* | : | **No. 09-1737** |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.** **January 29, 2010**

A mysterious federal raid on the offices of Defendant Swift Transportation Company in Tennessee led to the cancellation of the Commercial Drivers Licenses of a number of commercial truck drivers in Pennsylvania. Shawn McAlarnen filed a class action lawsuit challenging Pennsylvania's decision to require those commercial drivers who had been trained at the Swift Driving Academy and had their credentials questioned by the State of Tennessee to retest or have their licenses suspended. The parties have engaged in limited discovery and have reached a settlement that will allow class members to get on the road again. The Court provisionally certified a settlement class and approved the settlement agreement. Notice was sent to Class members and a fairness hearing was conducted on January 25, 2010. Presently before the Court is the uncontested motion for certification of the settlement class, final approval of the settlement agreement, and class counsels' fee petition. For the reasons that follow, the motion is granted in its entirety.

## I. BACKGROUND

### A. Nature and History of the Litigation

On April 24, 2009, Shawn McAlarnen, on behalf of himself and all others similarly situated, filed a Complaint against the Swift Transportation Company; Janet Dolan, the Director of the Bureau of Driver Licensing of the Pennsylvania Department of Transportation; and David Mitchell, Commissioner of the Tennessee Department of Safety. An Amended Complaint was filed on June 18, 2009. Shortly thereafter, the parties stipulated to the dismissal of Commissioner Mitchell and McAlarnen voluntarily dismissed Swift Transportation. Dolan filed a motion to dismiss which the Court denied on August 21, 2009.

Swift Transportation ran the Swift Driving Academy in Tennessee between May 1, 2005 and January 31, 2008. (Am. Compl. ¶ 34.) The Swift Driving Academy provided training to students seeking to obtain a Class A Commercial Driver's License (CDL). (*Id*. ¶¶ 34-35.) The Tennessee Department of Safety authorized Swift to administer its official CDL test and to issue results and certifications for Tennessee. (*Id*. ¶ 39.) Federal regulations allow for a CDL holder to transfer his or her license to another state; thus class members issued a valid CDL in Tennessee could obtain a valid CDL from the Commonwealth of Pennsylvania without taking another test or being recertified. (*Id*. ¶¶ 46-48.)

Class members are former students of the Swift Driving Academy. (*Id*. ¶ 22.) Each Class member passed a Tennessee commercial driver's licensing test administered and certified by Swift Transportation between May 1, 2005 and January 31, 2008. (*Id*. ¶ 9.) Class members also hold a Pennsylvania CDL based upon their satisfactory test results on the Tennessee exam administered by Swift Transportation. (*Id*. ¶ 10.)

In February of 2008, federal agents raided both the official State of Tennessee CDL testing office maintained by Swift Transportation and the Swift Driving Academy, although to this day, it remains unclear why. (*Id*. ¶¶ 50-52, 55-56, 71.) In December of 2008, the Commissioner of the Tennessee Department of Safety announced that he was retroactively nullifying all CDL test results and certifications issued by Swift between May 1, 2005 and January 31, 2008. (*Id*. ¶ 62.) The Commissioner also sent a form letter to Dolan stating his opinion that the Swift Transportation CDL testing failed to comply with Tennessee and/or federal regulations. (*Id*. ¶ 68.) Although Dolan was never informed of the nature of the alleged improprieties, she sent out notices on or about January 7, 2009, to Pennsylvania CDL holders whose tests were administered by Swift Transportation that their CDL's would be revoked unless they re-tested within sixty days. (*Id*. ¶¶ 69-71, 75.) According to the notices, due to "irregularities in Tennessee's licensing practice . . . and because the testing you completed in Tennessee is no longer valid, PennDOT must require you to take your commercial driving test . . . to maintain a valid CDL." (Mem. in Supp. of Unopposed Mot. to Grant Final Approval to Proposed Class Action Settlement and for Related Relief [Final Approval Mem.] Ex. A [Dolan Notice].) Drivers were required to supply a vehicle to be tested, which was difficult because most of them did not own their own truck and could not rent a truck for a single day. (Am. Compl. ¶¶ 96-99.) Dolan did not offer the CDL holders an opportunity for a pre-revocation hearing. (Am. Compl. ¶¶ 77-79.) An individual's failure to comply with PennDOT's directive by March 10, 2009 would result in cancellation of that individual's driving privileges. (Dolan Notice.) A subsequent letter from Dolan sent to those who failed to comply with her earlier notice informed them of their right to appeal the cancellation of their CDL. (Pl.'s Mem. in Opp'n to Def. Dolan's Mot. to Dismiss Ex. C [Mar. 11, 2009 Dolan Letter].)

Class members claim a federally recognized property right in their CDLs. (*Id*. ¶ 106.) The Class asserts that due process demands that CDL holders be informed of the alleged problems with the test and be given "the opportunity for a meaningful hearing prior to the proposed revocation of their Pennsylvania CDL's." (*Id*. ¶¶ 84, 113, 117, 127) The Amended Complaint sought only injunctive and declaratory relief against Dolan under 42 U.S.C. § 1983.

Dolan argued in her motion to dismiss that due process did not require a pre-deprivation hearing prior to Dolan's cancellation of the CDLs. Although she conceded that the suspension of an issued license required certain due process protections, Dolan contended that the prompt, post-deprivation hearing offered under Pennsylvania law satisfied those protections. (Dolan Mem. of Law in Supp. of Mot. to Dismiss at 9, 11-16.) Specifically, because the CDL holders were afforded notice and the chance to re-take the licensing examination, Pennsylvania afforded all the process due to the Class. (*Id*.) Dolan relied on Tennessee's claims that Swift's testing procedures were suspect and its recommendation that Pennsylvania retest former Swift Driving Academy students who had transferred their CDLs to Pennsylvania. (*Id*. at 14.) Dolan also claimed that the Eleventh Amendment barred the relief sought by the Class. (*Id*. at 16-22.)

The Court denied the motion to dismiss and Dolan filed an Answer to the Amended Complaint on September 3, 2009. Dolan denied both the substantive and class allegations in the Complaint. On November 6, 2009, Plaintiff filed a motion seeking preliminary approval of a settlement reached between the putative class and Dolan. The Court granted the motion and notice was distributed to the Class. The parties now seek certification of the Class for settlement purposes, as well as final approval of the settlement. The issues have been fully briefed and the Court conducted a fairness hearing on January 25, 2010.

4

## B.    Settlement Agreement

The Settlement Agreement and General Release defines the Class as "All former 'Swift Driving Academy' students who are Pennsylvania CDL holders who, since December 1, 2008, have received a form notice from the Director of the Bureau of Driver Licensing of the Pennsylvania Department of Transportation which is similar or identical to Attachment A [to the First Amended Complaint.]" (Amend. to Settlement Agreement Filed Nov. 6, 2009 ¶ 2.)  The Settlement Class is comprised of 198 CDL holders.  Although the Class is not further divided into subclasses, the Settlement Agreement treats individuals members of the Class differently.  The 198 member Class includes: (1) forty-two drivers who voluntarily decertified their CDL; (2) forty-five drivers whose driving privileges have been cancelled; (3) forty-seven drivers who, pursuant to PennDOT's notices to the putative class members, had retested and passed the skills driving retest; (4) forty-seven drivers who, pursuant to PennDOT's notices to the putative class members, failed the retest and were decertified; (5) nine drivers who have, according to PennDOT's records, left Pennsylvania; (6) seven drivers who still need to retest due to previous suspension of their CDLs; and (7) one driver who was not required to retest because he had previously held a Pennsylvania CDL.  (Mem. in Supp. of Unopposed Mot. to Grant Prelim. Approval to Proposed Class Action Settlement and for Related Relief Ex. A [Settlement Agreement and General Release] at 4-5.)

Pursuant to the terms of the Settlement Agreement, PennDOT agrees to reinstate, for a period of ninety days and for purposes of taking the retest, the CDLs of the forty-two drivers who voluntarily decertified their CDL and the forty-five drivers whose driving privileges have been cancelled.  (Settlement Agreement and General Release at 4-7; Final Approval Mem. at 6-8.)  These drivers would have to contact PennDOT to schedule a retest.  (*Id*.)  Those seven drivers who still

need to retest due to previous suspension of their CDLs would also have their CDLs reinstated for a period of ninety days but are eligible for a retest only if and when they have fully satisfied all outstanding obligations leading to suspension of their CDLs. (*Id*.) The remaining individual Class members would not be eligible to retest. (*Id*.)

The Settlement Agreement also sets forth that upon preliminary Court approval, PennDOT would mail, by first class and at its expense, notice to the last known address of each putative class member. (*Id*. at 6.) The proposed notice set forth how and when putative class members could lodge objections to the proposed agreement. (Final Approval Mem. Ex. B [Summary Notice of Pendency of Class Action and Notice of Hrg. and Proposed Settlement].)

According to the unopposed motion seeking final approval of the settlement, the proposed settlement alleviates a practical obstacle to reinstatement faced by individual members of the class. (Final Approval Mem. at 2.) Dolan's notice provided a short window of time in which to re-take the test and required each driver to supply a truck; many drivers could not meet these requirements because they did not own their own trucks and could not rent a truck for a single day. (*Id*. (citing Am. Compl. ¶¶ 96-99).) The proposed settlement addressed this by re-instating the cancelled licenses for a time period sufficient to obtain a truck for re-testing if a driver so desired. (*Id*. at 3.)

PennDOT also agreed to pay "the total, all-inclusive sum of twenty-two thousand five hundred dollars ($22,500.00) to class counsel." (Settlement Agreement and General Release at 8.) In exchange for the promises made by Dolan, the Class would forever release her from any claims arising from her actions giving rise to the litigation. (*Id*.)

## II.     CLASS CERTIFICATION

### A.     Numerosity, Commonality, Typicality, Adequacy of Representation

Although this Court previously granted preliminary approval to a proposed class action settlement, this Court still must make a final determination as to whether to certify the class and grant final approval to the settlement agreement. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir. 1995). Thus, this Court must decide whether the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied. *Id.* Federal Rule of Civil Procedure 23(a) mandates that four threshold requirements be met for a class to be certified: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *see also In re Life USA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001). The components of this foursome are referred to as numerosity, commonality, typicality, and adequacy of representation.

### 1.     Numerosity

The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see also In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). While no magic number guarantees that the numerosity requirement is satisfied, a class of more than forty is generally considered sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, there are 198 class members, a number which makes joinder impracticable. Accordingly, the numerosity requirement is satisfied.

### 2. Commonality

The commonality requirement is met when the named plaintiffs share "at least one question of fact or law with the grievances of the prospective class." *Id*. at 227 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

The commonality requirement is easily met here. All class members received notice from Dolan that their CDLs were at risk of cancellation based on purported troubles at the Swift Driving Academy, where all class members had taken their exam. Furthermore, all Class members argued that Dolan's action violated their due process rights because she failed to provide them with a pre-revocation hearing before cancelling their CDLs. Such common factual and legal issues meet the commonality requirement.

### 3. Typicality

The typicality requirement examines "whether the named Plaintiff's individual circumstances are markedly different [from those of unnamed class members] or . . . the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)); *see also Baby Neal*, 43 F.3d at 57-58 (internal citations omitted). "The heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." *Seidman v. Am. Mobile Sys., Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994).

In this case, all of the Class members, including the named Plaintiff object that Dolan's cancellation of their licenses without a hearing violated their constitutional rights. Furthermore, the named Plaintiff received the same notice that unnamed class members received and thus his interests

align with those of unnamed class members. The typicality requirement is met.

        *4.     Adequacy of representation*

This requirement ensures that the named plaintiffs fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Court must be satisfied that: (1) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation; and (2) the interests of the named representatives are not antagonistic to other class members. *See generally*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004); *see also Gen. Motors*, 55 F.3d at 800-01.

The Court believes that Plaintiff's counsel, Philip Stephen Fuoco, possesses the skill, experience, and qualifications necessary to conduct this litigation. Previously, the Honorable Joel A. Pisano of the District of New Jersey relied on Fuoco's twenty-five years of experience handling class actions in federal and state courts to find that this prong of the adequacy of representation requirement had been met. *See Hawker v. Consovoy*, 198 F.R.D. 619, 626 (D. N.J. 2001). This Court will follow that finding.

Additionally, the named representative received the same notice from Dolan as did all Class members. The Settlement Agreement aims to provide Class members an opportunity to keep their CDLs. As such, the interests of the named representative is not antagonistic to other Class members.

**B.      The Maintainability of the Class Action**

In addition to meeting the four requirements of Rule 23(a), a proposed class must also qualify under one of the three sub-parts of Rule 23(b). *Warfarin*, 391 F.3d at 527. Here, Plaintiff seeks to maintain this class action under Rule 23(b)(2) which allows for a class action to proceed if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." FED. R. CIV. P. 23(b)(2). This rule authorizes class actions for cases seeking injunctive

relief and looks to whether the relief sought will benefit the entire class. *See Stewart*, 275 F.3d at

228. Rule 23(b)(2) "is almost always satisfied in actions primarily seeking injunctive relief . . . .

What is important is that the relief sought by the named plaintiffs should benefit the entire class."

*Baby Neal*, 43 F.3d at 58-59.

The Class sought only injunctive relief in this case and therefore the Court concludes that

Rule 23(b)(2) is an appropriate basis for maintaining this class action.

### C.    Notice to the Class

Pursuant to Rule 23(e)(1), this Court must ensure that notice of the proposed settlement is

provided "in a reasonable manner to all class members who would be bound by the proposal." FED.

R. CIV. P. 23(e)(1). Due process requires that class members receive adequate notice because they

are bound by the judgment entered in the action. *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 474

(E.D. Pa. 2000). Because Plaintiff seeks class status under 23(b)(2), the Court need only "direct

appropriate notice to the class."[1] *See* FED. R. CIV. P. 23(c)(2)(A).

This Court's November 6, 2009 Order directed that the parties "distribute the approved class

notice to all class members via first class mail within ten (10) business of the date of this Order."

(Nov. 6, 2009 Order ¶ 4.) The notice sent to Class members informed them of their right to object

to the settlement and the payment of any attorneys' fees; it also instructed them how to object to the

settlement. (Final Approval Mem. Ex. B [Summary Notice of Pendency of Class Action].)

In accordance with this Court's Order, Dolan's counsel has provided the Court with proof

---

[1] Contrast this with classes certified under Rule 23(b)(3), which requires "the best notice
that is practicable under the circumstances, including individual notice to all members who can
be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

of mailing. Dolan declared that the Bureau of Driver Licensing for PennDOT mailed notice of the proposed settlement to all members of the Class, via first class mail, to the last known address PennDOT had for each of the 198 individuals in the Class. (Dolan Decl. ¶ 2.) Of the 198 notices sent out, five were returned. (*Id.* ¶ 3.) PennDOT checked its system to determine if these five individuals changed their address and none of them had and PennDOT had no additional contact information for these persons. (*Id.*)

The Court finds that the notice provided comports with both Rule 23 and due process. *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1560 (3d Cir. 1994) (finding notice sent by mail to each class member provided sufficient due process protections).


## III. FAIRNESS OF THE SETTLEMENT

A federal class action may only be settled with the approval of a court. FED. R. CIV. P. 23(e). Prior to approval, the court must conduct a hearing and decide whether the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see also Gen. Motors*, 55 F.3d at 785. "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *see also Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983). Of course, because "the district court acts as a fiduciary who serves as a guardian of the rights of absent class members . . . . the court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Gen. Motors*, 55 F.3d at 785 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).

The law looks favorably upon class action settlements because avoiding a trial conserves

scarce judicial resources. *Gen. Motors*, 55 F.3d at 784. The decision of whether a settlement should be approved as fair, reasonable, and adequate is guided by the nine-factor test enunciated by the Third Circuit in *Girsh*. The *Girsh* test directs district courts to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (internal citations omitted).

### A.      Complexity, Expense, and Duration of Litigation

This factor looks at the monetary costs and time involved in pursuing the litigation to trial and beyond. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004); *Gen. Motors*, 55 F.3d at 812.

This case raises novel legal issues and determining the contours of procedural due process is often a complicated balancing act. Additionally, Dolan has denied both the class and substantive allegations in the Amended Complaint. To that end, Dolan filed a motion to dismiss. Although the Court denied the motion, it is evident that Dolan would put forth a strenuous defense to the charges of the Class. Although Swift Transportation Company and David Mitchell, the Commissioner of the Tennessee Department of Safety are no longer in this case, resolution of this matter would likely involve considerable time and money. Furthermore, given the parties' decision to settle before discovery has commenced in earnest means that additional resources can be conserved. The Court

also agrees with the Class that because individual commercial truck drivers cannot work without their CDL, time is of the essence. Protracted litigation, briefing, and a possible appeal does not aid the Class. Because Class members want to be back on the road as quickly as possible, they could win the battle but lose the war if their rights are vindicated only after months or years of litigation. Thus, the Court finds that this first factor weighs in favor of the proposed settlement.

**B.      Reaction of the Class to the Settlement**

This factor asks whether the class supports the settlement. *Warfarin*, 391 F.3d at 536; *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). Silence from the class is generally presumed to indicate agreement with the settlement terms. *Gen. Motors*, 55 F.3d at 812 (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).

According to Class counsel no objections to the Settlement Agreement have been voiced. (Final Approval Mem. at 17.) "The only comments received by class counsel from class members have been positive inquiries, asking how soon the restoration will take effect and whether the class member can still sue Swift Transportation." (*Id*.) Additionally, no Class members appeared at the Fairness Hearing to object to the proposed settlement. The Court concludes that this factor weighs heavily in favor of final approval.

**C.      The Stage of the Proceedings and the Amount of Discovery Completed**

The third *Girsh* factor considers the current stage of the proceedings and the lawyers' knowledge of the strengths and weaknesses of their case. "Through this lens, courts can determine whether counsel has an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.

Although little discovery has occurred to this point, the parties agreed to voluntarily exchange

information. Substantial briefing and research on the issues has taken place. Furthermore, at the fairness hearing, counsel for the parties represented to the Court that they believe enough information has been exchanged for both sides to fairly evaluate the strengths and weaknesses of their case and their opponents'. The parties also believe that not much additional discovery would be required because most of the issues surrounding this case are legal and not factual in nature. Finally, Class counsel has also seen numerous relevant documents because similar actions have been filed elsewhere.

The Court believes that the proposed settlement was the result of arm's-length negotiation and therefore affords considerable weight to the views of experienced counsel regarding the merits of the settlement. *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). Therefore, the Court finds that this factor weighs in favor of the proposed settlement.

### D. The Risks of Establishing Liability and Damages

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. In examining this factor, the Court need not delve into the merits of each side's arguments, but rather "may give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997).

Here, although the parties agree that the cancellation of a CDL cannot be done without due

14

process, they hotly contest the contours of that process. Dolan asserts that Pennsylvania's statutory scheme, which provides for a post-deprivation hearing, comports with due process. The Class disagrees and contends that a pre-deprivation hearing is required. Determining the dictates of due process requires a careful balancing of a number of factors, including the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

It is not clear that Dolan's actions violated the due process rights of the Class. Although the Class was entitled to due process, determining exactly what procedural safeguards were required is a fact-intensive inquiry subject to debate. The Class steadfastly contends that due process required a pre-revocation hearing before Dolan could strip them of their federally protected property interest in their CDLs. (Pl.'s Mem. in Opp'n to Def. Dolan's Mot. to Dismiss at 18-31.) To the contrary, Dolan insists that Pennsylvania's post-deprivation procedures satisfy due process. (Mem. of Law in Support of Dolan's Mot. to Dismiss First Amended Compl. at 11-16.) Absent a settlement, the Court would have to decide this dispute and a finding for Dolan would leave the Class empty-handed. But while the parties have fought over the meaning of due process in this context, individual Class members have remained unable to work as commercial truck drivers. It is therefore reasonable that all involved would seek a quick resolution of this matter so Class members could get back on the road. Furthermore, Dolan raised jurisdictional issues in her motion to dismiss, claiming that the Eleventh Amendment barred the lawsuit. Although the Court did not agree with this, the

issue could certainly raise its head on appeal.

The Class also notes that litigation similar to that before this Court was on-going in New Jersey. (Final Approval Mem. at 14.) The court in the New Jersey case eventually found against the commercial truck drivers. Although the facts between the two cases are not identical, the result in the New Jersey highlights the risks inherent in this litigation.

The risk of establishing damages is often considered in conjunction with the risks of establishing liability. *See, e.g., Lenahan v. Sears, Roebuck and Co.*, Civ. A. No. 02-0045, 2006 WL 2085282, at *14 (D.N.J. July 24, 2006). Here, the Class sought only injunctive and declaratory relief against Dolan. Thus, its right to such relief rises or falls with its ability to establish liability against Dolan. With victory for the Class by no means assured, the Court finds that the risks of establishing liability and damages weigh in favor of approving the proposed settlement.

**E.    The Risks of Maintaining the Class Action Through Trial**

In her Answer, Dolan denied the class allegations contained in the First Amended Complaint. It is unclear whether Dolan would have filed a motion to formally challenge the certification of the class in this litigation. However, a court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable. *See Linerboard Antitrust Litig.*, 321 F. Supp. 2d at 631 (citing *In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986)).

According to the Complaint, Dolan's actions against class members were uniform in that all class members received notice that their CDLs would be cancelled if they did not re-test within a short period of time. However, not all members of the class stand in the same position. For example, some class members had their driving privileges cancelled, some re-took the test and passed while others re-took the test and failed. The risk of decertification is a real possibility here,

16

and thus this factor weighs in favor of approving the proposed settlement.

**F.     The Ability of the Settling Defendants to Withstand a Greater Judgment**

This factor does not play a role in this litigation.  The Class sought only injunctive and declaratory relief.  A large portion of the class members are having their licenses re-instated and being afforded the opportunity to re-test.  Although the agreement expressly states that the settlement is not an adjudication on the merits, the reinstatement of their licenses and chance to re-test is largely the relief sought by the Class.  Obviously, the Commonwealth cannot simply allow persons to drive on its highways unless assured that they are competent and will not be a menace on the roads.  Thus, it is unclear to the Court what a "greater judgment" would look like in this litigation.  The result obtained, coupled with the risks attached to establishing liability already discussed, leads this Court to conclude that the settlement is fair, reasonable, and adequate.

**G.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of the Attendant Risks of Litigation**

It is difficult to quantify the value of the settlement achieved by the Class here.  Many class members will have their licenses re-instated so they can re-test if they choose and continue to maintain their CDLs in Pennsylvania.  For those whose livelihoods depend upon this privilege, this settlement is of vital importance.  Some class members however, may not wish to maintain their Pennsylvania CDL or may have had their CDL suspended for reasons unrelated to the facts underlying this litigation and thus must have their suspension lifted before they may operate a commercial vehicle in this Commonwealth.  For them, this settlement has little or no value.  But given the possibility that every Class member faced the possibility of having their CDL suspended indefinitely, the proposed settlement falls within the range of reasonableness.

The Court is aware that certain Class members are not receiving any benefit from this agreement. Those drivers who already have their license, either because they passed the Pennsylvania CDL test after receiving Dolan's notice or because they already had a Pennsylvania CDL apart from the test administered by Swift are unaffected by this agreement. The Court is not troubled by this because they already received more than the relief sought by the Class – they have their Pennsylvania CDL. As for those Class members whose licenses are suspended for a reason other than that stated in the Dolan notice, they receive a benefit from the agreement despite the fact that their licenses are not automatically restored. As Plaintiff's Memorandum notes, some of these drivers may have had their licenses suspended due to traffic accidents or because their decision to move out of the state made them ineligible to hold a Pennsylvania CDL. (Final Approval Mem. at 7.) These drivers must first remove any obstacles that make them currently unable to hold a Pennsylvania CDL before they can re-test. However, the Dolan notice no longer serves as an additional impediment disqualifying them from holding a Pennsylvania CDL. Of course, this Court would not expect to see a provision of the agreement that wiped the entire slate clean for these drivers. Dolan's notice had nothing to do with their driving records and re-instating their CDL to allow for a re-test only after any remaining disqualifications under Pennsylvania law are removed is a benefit to these Class members. Finally, those drivers who have taken and failed a recent Pennsylvania CDL test since the Spring of 2009 are not eligible for re-testing under the terms of the Settlement Agreement. Although these individuals do not benefit from the settlement, the failure of the test constitutes an independent basis on which the Commonwealth can refuse to reinstate their CDL. The Class itself seeks an opportunity to be re-tested, which these individuals have already had. Allowing these individuals another re-test would not remedy any unfairness to which they were

subjected but would merely give them a second bite at the apple not available to those who have yet

to be tested in Pennsylvania. As such, any remedy these individuals may have lies in appealing their

recent failure of the CDL test.

Based upon the submissions and representations of counsel, coupled with the absence of any

objection from any Class member, this Court is satisfied that after weighing the *Girsh* factors, the

Settlement Agreement is fair, reasonable, and adequate.


## IV.    ATTORNEYS' FEES

### A.    Overview

Class counsel seeks $22,500 in costs and fees. According to Class counsel's petition for fees,

this amount represents less than half of the total adjusted lodestar if billed at Class counsel's usual

rates. (Class Counsel's Petition for Attorneys' Fees and Costs at 1.) Furthermore, the fees and costs

sought are to be paid by Defendant and will not reduce or diminish the relief obtained by the Class.

(*Id.*)

Under the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may

award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'

agreement." FED. R. CIV. P. 23(h). This Court must conduct a "thorough judicial review" of class

counsels' request for attorneys' fees in this matter. *See Gen. Motors*, 55 F.3d at 819; *Prudential*, 148

F.3d at 333. The party requesting fees must demonstrate the reasonableness of its request, and

therefore must submit evidence that supports its request. *See Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983).

Courts in this Circuit employ one of two methods for calculating attorneys' fees in the class

action context. The percentage-of-recovery method awards class counsel a fixed portion of the settlement fund. Under this method, courts determine an appropriate fee for class counsel by examining the size of the settlement fund, any objections to the fee request, counsel's skill and efficiency, the complexity of the litigation and the amount of time counsel spent on it, the risk of nonpayment, and awards in similar cases. *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552-53 (E.D. Pa. 2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The lodestar method, normally applied in statutory fee shifting cases such as this one, multiplies the number of hours reasonably worked by a reasonable hourly rate. *See Gunter*, 223 F.3d at 199; *see also Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). A court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *Student Pub. Interest Research Group of N.J., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988). The lodestar method is appropriate where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *Saunders v. Berks Credit & Collections, Inc.*, Civ. A. No. 00-3477, 2002 WL 1497374, at *15 (E.D. Pa. July 11, 2002) (quoting *Gen. Motors*, 55 F.3d at 821); *see also Rite Aid Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

The Court will employ the lodestar test to determine the reasonableness of Class counsel's request for fees. First, Class counsel's request for fees is brought pursuant to 42 U.S.C. § 1988, which provides that in civil rights actions, a district court may award attorneys' fees as part of the costs awarded to a prevailing party. 42 U.S.C. § 1988. The lodestar method is normally applied to statutory fee-shifting cases. *See Gen. Motors*, 55 F.3d at 821 ("Courts generally regard the lodestar

20

method . . . as the appropriate method in statutory fee shifting cases.")  Second, the Class is not receiving monetary compensation – no common fund exists to allow this Court to use the percentage-of-recovery method.  Because the recovery of the Class evades precise calculation, the lodestar method is the appropriate means for addressing the request for attorneys' fees.

### B.    The Lodestar

McAlarnen and the Class were represented by three lawyers.  Philip Stephen Fuoco's unadjusted lodestar is $9,688.75 based on 16.85 hours worked at a rate of $575 an hour.  (Fee Petition at 3; Fee Petition Ex. A [Osefchen Certification] ¶¶ 4, 8.)  Joseph A. Osefchen's unadjusted lodestar is $28,162.50 based on 75.1 hours worked at a rate of $375 an hour.  (Fee Petition at 3; Osefchen Certification ¶¶ 4, 8.)  John Shniper's unadjusted lodestar is $15,552 based on 43.2 hours worked at a rate of $360 an hour.  (Fee Petition at 3; Osefchen Certification ¶¶ 4-5.)  In addition, paralegals spent 16 hours of work on this matter at $78 per hour for a total of $1,248.  (Fee Petition at 3.)  The grand total comes to $54,651.25. Counsel have submitted detailed records of the time spent on this litigation.  (Fee Petition Ex. B [Billing Records].)

Class counsel points out that Fuoco has been involved in well over 100 certified class actions over the past thirty-five years and that as late as 2008, a court awarded him fees of $525 per hour.  (Fee Petition at 4-5.)  Fuoco has also authored or co-authored numerous works on class action litigation.  (*Id*. at 5-6.)  Osefchen has participated in over forty certified class actions in the last seventeen years and has recently had a rate of $350 per hour approved in the District of New Jersey.  (*Id*. at 6.)  He has published two works in the field of class actions.  (*Id*. at 6-7.)  Shniper has over thirty-five years of class action expertise and has co-authored a treaty on class actions. *See Colbert v. Trans Union Corp.*, Civ. A. No. 93-6106, 1997 WL 550784, at *4 (E.D. Pa. Aug. 22, 1997).

Upon review of Class counsel's submissions, the Court finds that the hours expended and hourly rate requested are reasonable. Accordingly, the Court finds that the lodestar here is $54,651.25. The lodestar is "strongly presumed to yield a reasonable fee." *Washington v. Phila. Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996). Furthermore, Class counsel did not discuss attorneys' fees and costs until after they had come to terms with Defendant over substantive relief to the Class. (Fee Petition at 1.) Only then did counsel engage in arm's-length negotiations over fees and costs to be paid by Defendant. (*Id.*) Such conduct weighs in favor of approving the fee petition. *See Weber v. Gov't Employees Ins. Co.*, Civ. A. No. 07-1332, 2009 WL 3234659, at *18 (D.N.J. Sept. 30, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)).

The lodestar here is $54,651.25. Because this is presumed to yield a reasonable fee, logic dictates that Class counsel's request for $22,500 is reasonable.

IV.     **CONCLUSION**

For the reasons stated above, the Court grants final certification of the Class in accordance with Rule 23, holds that the settlement is fair, adequate, and reasonable, and awards Class counsel $22,500 in attorneys' fees and costs. An appropriate Order will be docketed with this Memorandum.